**GLENWAL DEVELOPMENT CORPORA-TION, Plaintiff,**

v.

**Hector L. SCHMIDT, Director Consumer Services Administration, Defendant.**

**Civ. No. 941–71.**

United States District Court,
D. Puerto Rico.

Jan. 5, 1972.

Nachman & Feldstein, San Juan, P. R., for plaintiff.

Henry Schmer, Santurce, P. R., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

TOLEDO, District Judge.

This cause was heard on plaintiff's motion for a preliminary injunction, pursuant to order to show cause addressed to the defendant. Both parties appeared by counsel. After having considered the verified complaint, plaintiff's motion for a preliminary injunction, the oral and documentary evidence admitted during the hearing, and the arguments of counsel, the Court makes the following:

### FINDINGS OF FACT

1. Plaintiff is a Puerto Rico corporation engaged in the construction business in the Commonwealth of Puerto Rico, including the construction and sale of dwellings.

2. The defendant is the Director of the Consumer Services Administration of the Commonwealth of Puerto Rico, an agency established by Act No. 148 of 1968 of the Commonwealth of Puerto Rico, 23 L.P.R.A. §§ 1001–1015.

3. By Act No. 130 of 1967, 17 L.P.R.A. §§ 501–519, the Commonwealth of Puerto Rico created the Office of the Construction Officer with power to regulate the activities of every urbanizer or constructor in Puerto Rico.

4. By Section 2 of Act No. 148 of 1968 of the Commonwealth of Puerto Rico, 23 L.P.R.A. § 1002, all powers and faculties conferred on the Construction Officer were transferred to the Consumer Services Administration, and the defendant herein at all times pertinent to this action has exercised the powers of the Construction Officer.

5. Pursuant to Section 8 of Act No. 130 of 1967, 17 L.P.R.A. § 508, the defendant "may * * * require the urbanizer or constructor to render a bond for a sum not greater than ten percent (10%) of the sale price of [the] dwelling [at] the time of the granting of the final purchase-sale deed of the dwelling * * * to guaranty the expenses of repair and correction of defects in the construction."

6. The defendant is empowered to promulgate all rules and regulations necessary to secure compliance with the laws administered by the Agency which he presides. 23 L.P.R.A. § 1005(a).

7. Section 5 of Act No. 148 of 1968 of the Commonwealth of Puerto Rico, 23 L.P.R.A. § 1005(a) requires that "the rules and regulations not of an internal character shall be promulgated in accordance with the provisions of Act No. 112 of June 30, 1957, known as the Rules and Regulations Act of 1958 [3 L.P.R.A. § 1041–1059]" and further requires "the Director [to] hold public hearing after publishing a notice in at least one of the newspapers of greatest circulation in Puerto Rico, indicating the date, place and nature of said hearing."

8. The defendant has not promulgated any rules and regulations for the administration of Section 8 of Act No. 130 of 1967, supra. No notice of public hearings has been published, no public hearings have been held, and there has been no compliance with Act No. 112 of 1957 of the Commonwealth of Puerto Rico.

9. Rules and regulations for imposing the requirement of a bond upon, or exempting, any urbanizer or constructor from such requirement, in accordance with Section 8 of Act No. 130 of 1967, supra, are "not of an internal character."

10. On May 25, 1971, the defendant issued an order purportedly pursuant to the powers conferred upon him by the aforesaid Act No. 130 of 1967 and No.

148 of 1968, supra, providing in pertinent part "that every urbanizer and/or constructor as this term is defined in Act No. 130, that may be required to do so by the Director of the Consumer Services Administration, will be obliged, after June 25, 1971, to post a bond equivalent to 2% of the total sales price of each dwelling unit that is sold in Puerto Rico."

11. The said order of May 25, 1971, did not indicate any bases, norms or standards to be used by the defendant in determining that a particular urbanizer or constructor would be required to post bonds, and the order also cautioned that failure of compliance with same would result in the application of the "penal provisions" contained in the said Acts Nos. 130 and 148, supra. No public hearing was held prior to the issuance of said order.

12. The said laws of the Commonwealth of Puerto Rico do include penal provisions. 17 L.P.R.A. § 518 and 23 L.P.R.A. § 1015.

13. On June 21, 1971, the defendant notified the plaintiff that it would be required to post the bond in the amount of 2% of the total sales price of each dwelling unit sold after June 25, 1971. Plaintiff was not accorded a hearing prior to the issuance of said notification.

14. The plaintiff filed a petition for reconsideration of the defendant's order of June 21, 1971, contending that the order violated plaintiff's constitutional rights.

15. After a hearing held on July 19, 1971, the petition for reconsideration was denied and the defendant issued a ruling on November 26, 1971, continuing the requirement of a bond with respect to plaintiff.

16. The requirements of bonds with respect to any particular urbanizer or constructor was based upon twelve factors listed in an internal memorandum of the Consumer Services Administration of the Commonwealth of Puerto Rico, addressed to the defendant by Mr. Hipólito de Jesús Kercadó Febres and dated June 10, 1971. This memorandum listed twelve (actually numbered 13 by error) factors or criteria, as follows:

"1. Time of answer to complaint.

2. Time in closing cases.

3. Manner of answering the letters.

4. Cases that must be referred to Legal Division.

5. Refusal to answer correspondence.

6. Violation of the provisions of the Regulation.
   a. Section 2, Paragraph 3
   b. Section 9

7. Violation of article 5 of the Law.

8. Resistance to correcting defects.

9. Incorrect information of having corrected.

10. Signature of deeds without use permit.

11. Signature of blank contracts.

12. Signature of deeds before the house is habitable."

17. The said memorandum was not promulgated in the prescribed manner set forth in Finding No. 7 above.

18. The said memorandum does not purport to promulgate rules and regulations, but merely lists the factors to be considered without indicating how the factors are to be considered, for example, the weight to be given to each, the time to be used as the base period for determination of compliance with each, or the number or percentage of violations of any one or more factors which would result in the imposition of the requirement of a bond. No reference of any kind is made in said memorandum to the manner of determining that a particular urbanizer or constructor is exempt from the requirement of posting bonds or the manner in which an urbanizer or constructor may achieve exempt status.

19. Some of the urbanizers or constructors in Puerto Rico were exempted from the requirement of posting bonds, and others who were initially required to

post bonds have subsequently been exempted.

20. The actual determination with respect to each urbanizer or constructor was based upon a compilation or summary of all cases of alleged construction defects reported to the Consumer Services Administration in connection with the dwelling units sold by the particular urbanizer or constructor. The summary was prepared by personnel of the Administration under the supervision of Hipólito de Jesús Kercadó Febres, Chief of the Program of Protection of Home Buyers of the Administration. The summary purports to list all complaints filed against each urbanizer or developer for alleged construction defects, but does not identify the entries in any way other than the date on which the complaint was filed in the Administration. There is no way to verify any specific entry except to review all of the files pertaining to the particular urbanizer or developer. The summary is handwritten, has entries after June 15, 1971 although that is the date on which the determination was allegedly made, and has not been published or otherwise disclosed except upon request of an urbanizer or constructor.

21. It is impossible to state what basis the defendant used for his determination as to the exempt or non-exempt status of each urbanizer or constructor. Mr. Hipólito de Jesús Kercadó Febres effectively made the determination since the defendant acted on the basis of an oral report from Mr. Kercadó. Mr. Kercadó testified first that violation of any of the factors or criteria listed in the memorandum referred to in Finding No. 16 above was sufficient to impose the requirement of bonds upon a constructor. Mr. Kercadó also testified that the determination was made by computing the average time elapsed between the date of the complaint and the date on which the case was closed by correction of construction defects or otherwise, and limited to cases of construction defects. No consideration was given to delays resulting from the constructor's contention that there were no construction defects, to the type of defect and the time required to correct same, or to delays caused by the complaining party, the owner of the dwelling. All cases, both closed and pending as of June 15, 1971, were included in the averaging. Also included were those cases which were referred to the legal division of the Administration for action, and which included cases pending in the courts of the Commonwealth of Puerto Rico in which the plaintiff contended it was not responsible for construction defects.

22. Mr. Hipólito de Jesús Kercadó Febres reported orally to the defendant the results of his survey with respect to each constructor. No written memorandum or report was prepared. Based on the oral report, the appropriate notification was sent, either requiring bonds or exempting the constructor.

23. No consideration was given to the financial stability of the constructor in imposing the requirement of bonds nor was any financial information requested of any constructor.

24. The notification sent to the various constructors, both exempt and non-exempt, contained the following invitation:

"If for any reason you believe that you should not be covered by this order, please communicate with this Administration within the next ten (10) days after the date of receipt of this letter for the purpose of making the corresponding determination as the case may be."

25. Some of the constructors did communicate with the Administration and some were exempted after conferences with Mr. Kercadó Febres. The only record kept of these conferences indicates the date of each conference and the identity of the particular constructor. No stenographic or other record of the conferences was made, nor were written memoranda or reports of same prepared. Mr. Kercadó reported orally to the defendant and the appropriate order was entered either continuing the requirement of bond or granting exemption.

26. A conference was held on June 15, 1971, with representatives of the Home Builders Association of Puerto Rico and financial institutions involved in the financing of the construction and purchase of dwelling units in Puerto Rico. Those constructors who are not members of the Home Builders Association of Puerto Rico were not invited to attend. On June 23, 1971, Amneris Diaz, Chief of the Division of Regulation of Home Construction of the Consumer Services Administration of the Commonwealth of Puerto Rico, sent a letter to James T. Barnes & Co., inclosing a copy of the order of May 25, 1971, mentioned in Finding No. 10 above, and stating:

> "We reiterate our appreciation for your participation in the meeting of June 15, 1971, and we request your collaboration in the implementation of said order."

27. Plaintiff limited its prayer for relief at this time to a preliminary injunction, restraining and enjoining the defendant, his agents, servants, employees and attorneys and all persons in active concert and participation with him from enforcing the requirement that plaintiff post bonds as aforesaid, and plaintiff further informed the Court that questions of local law would be litigated in the courts of the Commonwealth of Puerto Rico, with reservation of right to litigate questions of federal law or federal constitutional rights in this Court.

28. The procedure followed by the defendant in determining that the plaintiff should post bonds pursuant to Act No. 130 of 1967, supra, and that other constructors are exempt from said requirements has delegated the function of making such determination to Hipólito de Jesús Kercadó Febres, without the promulgation of corresponding rules and regulations; without compliance with the law which empowers the defendant to make such determination; and without procedural or substantive safeguards against discrimination between the persons subject to the law.

29. The defendant intends to continue requiring plaintiff to post bonds as aforesaid unless restrained and enjoined therefrom, and has threatened prosecution under the penal provisions of the pertinent statutes in the event of non-compliance.

30. The damage, if any, to defendant in the event he is wrongfully enjoined, will be minimal and can be obviated by compliance with the law under which he purports to act.

On the basis of the foregoing, the Court makes the following:

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the parties and of the subject matter of this action pursuant to the United States Code, Title 28, § 1343.

2. Acting under color of Act No. 130 of 1967 and Act No. 148 of 1968 of the Commonwealth of Puerto Rico, the defendant has subjected the plaintiff and has caused the plaintiff to be subjected to the deprivation of rights, privileges and immunities secured by the Constitution of the United States of America, specifically the rights to due process of law and the equal protection of the laws, in violation of the United States Code, Title 42, § 1983.

3. The failure of the defendant to promulgate rules and regulations as required by the law under which he purports to act, the failure to establish and publish norms or standards by which an objective determination may be made as to whether the plaintiff or any other person is subject to the provisions of the law as applied, and the failure to preserve adequate records upon which the determination with respect to plaintiff or any other person may be objectively verified, each constitute a denial of due process and the equal protection of the laws.

4. The threat of prosecution under the penal provisions of the pertinent laws establishes the threat of irreparable injury required by traditional doctrines of equity. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

5. In the posture of this case in which plaintiff is not at this time seeking a determination that Act No. 130 of 1967 of the Commonwealth of Puerto Rico is unconstitutional, but rather a preliminary injunction to restrain acts of the defendant under color of that statute which are clear violations of rights secured to plaintiff by the Constitution of the United States, this Court is not required to apply the doctrine of exhaustion of administrative remedies and abstention, and in the exercise of its discretion, after balancing the opposing interests, the Court deems it appropriate that a preliminary injunction be issued. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); McNeese v. Board of Education for Community Unit School District 187, Cahokia, Illinois, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Drown v. Portsmouth School District, 435 F.2d 1182 (1 Cir. 1970).

6. A preliminary injunction should issue in the form and scope provided by Rule 65(d) of the Federal Rules of Civil Procedure.