■   Irwin Slater, Appellant, v. Norman F. Gallman, Individually and as Acting Commissioner of the Department of Taxation and Finance of the State of New York, Respondents.— Order, Supreme Court, New York County, entered on April 10, 1973, granting defendants' motion to dismiss the complaint herein for insufficiency and lack of subject matter jurisdiction and deny-

ing plaintiff's cross motion for summary judgment and judgment entered thereon on April 16, 1973, affirmed without costs and without disbursements. Appellant has demonstrated no valid reason which would excuse him from following the procedure for administrative review, as set forth in section 374 of the Tax Law. Hence, Special Term was without jurisdiction and properly dismissed his action. Concur Markewich, J. P., Murphy and Capozzoli, JJ; Kupferman, J., dissents in the following memorandum: This is an action for declaratory judgment of the nullity of allegedly false and fictitious tax assessments and to enjoin their enforcement. In December, 1970, the New York State Tax Commission notified the appellant that, upon audit, he had not paid personal income and unincorporated business taxes for the years 1944 through 1949. The aggregate tax was $7,445.15, together with interest and penalties. The warrant filed by the State Tax Commission with the Kings County Clerk on January 7, 1971 amounted to $53,440.38. When he wrote to the New York State Tax Bureau requesting copies of the returns for the years in question, he was told that there was no record of his having filed them. This, of course, was in contradiction of the original notification that an audit had disclosed the delinquency. It is the commission's contention that the indication of an audit was an inadvertent error and should not change the situation. It is further postulated that the information actually came from the Untied States Internal Revenue Service. Inasmuch as the assessments for 1944 through 1949 were issued on December 3, 1970, pursuant to section 374 of the New York State Tax Law plaintiff-appellant had one year to file his application with the State Tax Commission for an administrative remedy. Although the time limit was brought to his attention prior to the expiration, he did not pursue his administrative remedy but instead brought this action after the expiration of the period. As Benjamin has pointed out in his exhaustive work on Administrative Adjudication in the State of New York (vol. IV, Supplementary Report on the Department of Taxation and Finance [1942], p. 26), the usual prerequisite for judicial review is the payment of the tax or the filing of an undertaking to cover it. Cooper in discussing the requirement for exhausting administrative remedies states as (2 State Administrative Law, § 3, p. 586) follows: "Section 3 Estoppel Ordinarily, when a petition seeking judicial redress of alleged administrative error is denied on the grounds that the petitioner has failed to exhaust his administrative remedies, it only means that the party must go back to the administrative agency and proceed to exhaust the remedies there available to him. It occasionally happens, however, that after such an attempt to take the case into the courts has been rebuffed, the petitioner finds that it is too late to seek further administrative consideration of the case. The administrative remedies which he failed to exhaust in the first instance are no longer available. The unfortunate petitioner in such cases must go without relief. He is deprived of the opportunity to have a hearing on his contention, before either the administrative agency or the courts. This is the so-called doctrine of estoppel for failure to exhaust administrative remedies. It amounts to no more than applying the usual exhaustion doctrine in cases where the results may be disastrous. The doctrine of estoppel is savagely harsh. There is some doubt to what extent it applies outside of cases where strong reasons of public convenience require that a final and unassailable determination be speedily reached. Typical of this category, of course, are tax cases, where awareness of the constant pressing need for prompt collection of the public revenues is apparently a factor in judicial thinking. It was in the tax field that the leading case arose. The state courts continue to apply the doctrine in tax

cases." Obviously, the rationale of "prompt collection of the public revenues" has no application here when the notice of assessment comes more than 20 years late. Where the effect of denying judicial review and requiring administrative adjudication brings the harsh result of leaving the plaintiff-appellant, as here, without any remedy, the doctrine ought to be carefully examined. As the United States Supreme Court said in *Parisi* v. *Davidson* (405 U. S. 34, 37), "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence — to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." Here, the administrative agency, having made a clear error, did nothing to correct it but instead put the burden on the plaintiff-appellant to take action with respect to a situation for which he could not really be expected to have the information available even after his pertinent inquiry. The recent language of the New York State Court of Appeals in *Myerson* v. *Lentini Bros. Mov. & Stor. Co.* (33 N Y 2d 250, 260) is most apt: "The slim showing made to support inquisitorial action directed against Lentini, if allowed to justify the broad subpoena issued in this or in future cases, might too easily subject innocent parties to administrative abuse." When the situation calls for judicial intervention, and denying it would create a hardship, the United States Supreme Court has not required that administrative remedies be exhausted. See *McKart* v. *United States* (395 U. S. 185), involving the Selective Service System, and *Damico* v. *California* (389 U. S. 416) involving welfare. These cases are discussed in Administrative Law Treatise by Kenneth Culp Davis (1970 Supp., ch. 20) on exhaustion of administrative remedies. Referring to the *McKart* opinion, Davis states (§ 20.01, p. 643) "the result rests in part upon the hardship of going to jail without any judicial review of an assertedly invalid order." In the instant case, we have the hardship of paying taxes covering a period a generation earlier — and sevenfold! It may be presumed in any event that the administrative remedy was actually sought and denied. It may also be considered that the complaint alleges facts demonstrating that the State Tax Commission acted without jurisdiction or that the assessments have no proper application to the taxpayer, having been incorrectly arrived at. (See *Brown* v. *New York State Tax Comm.*, 304 N. Y. 651, affg. without opn. 279 App. Div. 837; *Dun & Bradstreet* v. *City of New York*, 276 N. Y. 198.) The order and judgment appealed from should be reversed and the defendant's motion to dismiss the complaint denied.